IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RONALD BARROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-941-NJR-DGW |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a), for a Report and Recommendation on Plaintiff's Second Motion for Temporary Restraining Order (Doc. 4).   For the reasons set forth below, it is **RECOMMENDED** that the Motion be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff Ronald Barrow, currently incarcerated at Menard Correctional Center ("Menard"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs.   More specifically, Plaintiff alleges that Defendants have failed provide him adequate eye care since 2012, resulting in the complete loss of vision in his right eye and progressive vision loss in his left eye.   Plaintiff is seeking a temporary restraining order (Doc. 4), to compel Defendants to perform their pre-existing duties under federal and state law.   Defendants to this action are Wexford Health Sources, Inc., Dr. Eric Johnson (site

optometrist), Dr. Christine Lochhead (site optometrist), Dr. J. Trost (site medical director), Dr. Robert Shearing (site medical director), Gail Walls (nursing director), Dr. Baker (utilization management physician), and Kim Butler (Menard warden).

In support of his Motion, Plaintiff explains that in 2012, Dr. Ahmad, a retina specialist and subcontractor for Wexford Health Sources, Inc. ("Wexford") recommended that he undergo right eye cataract surgery and have his scar tissue removed. After approximately 21 months, Plaintiff avers that he underwent a cataract removal, but did not receive any treatment for his scar tissue. As such, Plaintiff claims he has lost all vision in his right eye, and is continuing to lose sight in his left eye. As Plaintiff's Motion for a temporary restraining order ("TRO") is somewhat sparse with factual details, the Court has reviewed Plaintiff's Complaint, as it addresses, with more specificity, the concerns Plaintiff has regarding his medical treatment at Menard.

According to Plaintiff's Complaint, Plaintiff notified Defendant Dr. Eric Johnson of apparent vision problems in 2012. More specifically, Plaintiff claims he lost vision in his right eye in January, 2012 and, on February 23, 2012, Defendant Dr. Christine Lochhead diagnosed Plaintiff with a detached retina and referred him to an outside specialist, Dr. Ahmad, for corrective surgery on February 27, 2012. Plaintiff complains that although Defendants Johnson and Lochhead issued referrals for cataract removal procedures in March, 2012, Wexford would not authorize them.

In late July 2012, Plaintiff began seeing floaters in his left eye, and informed Defendant Johnson of this on July 24, 2012. However, Plaintiff asserts that Defendant Johnson failed to respond. On August 1, 2012, Plaintiff was seen by Dr. Ahmad, diagnosed with a torn retina, and immediately treated. At a subsequent appointment with Dr. Ahmad in October 2012, he indicated

that Plaintiff should undergo scar tissue removal procedures.   Although Defendant Lochhead submitted another referral for the removal procedures, Defendants Dr. Robert Shearing and Dr. Baker denied the referrals, apparently pursuant to Wexford policies.   Plaintiff avers he regularly requested treatment from Defendants Johnson, Lochhead, Shearing, Trost, and Walls, but to no avail.

On December 26, 2013, Plaintiff was diagnosed with a left eye cataract and Defendant Lochhead indicated he was eligible for removal procedures.   However, Plaintiff claims he did not meet with an outside specialist until March 5, 2014, and, at that time, the thickness of the cataract in his right eye prevented the provider from detecting the right eye scar tissue.   Plaintiff asserts he was then referred to a retina specialist for an appointment on April 3, 2014.   This appointment was cancelled, and not rescheduled until May 16, 2014.   Plaintiff was diagnosed with a left eye cataract, but the specialist could not see the right eye scar tissue because of the right eye cataract. Removal of the cataract was recommended and Defendant Lochhead submitted another referral for right eye cataract surgery, which was approved.   Plaintiff underwent surgery on June 26, 2014, wherein his right eye cataract was removed, although scar tissue remains.   Plaintiff indicates that his left eye cataract also remains.

On July 3, 2014, Defendant Lochhead submitted a third referral for Plaintiff to undergo a procedure to remove the scar tissue in his right eye.   Plaintiff contends he has not been able to receive this procedure due to an institutional lockdown that occurred shortly after the referral was made and continued into August, 2014.   Plaintiff filed this action on August 28, 2014.   As mentioned previously, Plaintiff has requested a TRO to compel Defendants to perform their duties under federal and state law and provide Plaintiff with medical treatment for his eye condition,

including removal of scar tissue in his right eye and removal of a cataract in his left eye.   Plaintiff also asks that Defendants be compelled to provide treatment for his lower back pain (Doc. 4).

Defendants Kim Butler and Gail Walls filed their response to Plaintiff's Motion for Temporary Restraining Order on October 16, 2014 (Doc. 56).   Defendants Butler and Walls assert that Plaintiff cannot show a likelihood of success on the merits of his claim against these Defendants as these Defendants are not medical experts.   Defendants assert that Butler, a non-medical professional, and Walls, a nurse, are entitled to rely on treating doctors' decisions with respect to Plaintiff's medical care.   Further, Defendants Butler and Walls contend that Plaintiff is not likely to suffer irreparable harm absent an injunction as Plaintiff is currently receiving consistent and appropriate treatment for his eye conditions.

Defendant Dr. Christine Lochhead filed her response to Plaintiff's Motion for Temporary Restraining Order on October 23, 2014 (Doc. 61).   Defendant Lochhead asserts that Plaintiff's request for a temporary restraining order is not directed at her, and, in any event, Plaintiff cannot establish any likelihood of success on the merits of his deliberate indifference claim against Defendant Lochhead.

Defendants Wexford Health Sources, Inc. ("Wexford"), Dr. Robert Shearing, Dr. John Trost, and Dr. Mark Baker (hereinafter referred to as the "Wexford Defendants") filed a response to Plaintiff's Motion for Preliminary Injunction on October 15, 2014 (Doc. 54).   The Wexford Defendants contend that Plaintiff is not likely to succeed on the merits of his claim, as he has received above average treatment for his eye problems, and, in any event, the Wexford Defendants assert that Plaintiff has an adequate remedy at law and will not suffer irreparable harm in the absence of preliminary relief.

In support of their response, the Wexford Defendants attached the affidavit of Defendant Trost, as well as copies of Plaintiff's voluminous medical records from January 1, 2012 through September, 2014 (*See* Docs. 54-1 and 54-2).   According to Plaintiff's medical records, Plaintiff was first evaluated at Menard by an on-site Doctor of Optometry on January 10, 2012 for an eye examination.   At this time, Plaintiff had no indication of any vision loss (Doc. 54-2, p. 2).   On February 23, 2012, Plaintiff first noted changes in his visual acuity and a referral to Marion Eye Center was approved on February 24, 2012 (Doc. 54-2, pp. 3-5).   Plaintiff was approved for, and had retinal surgery on, February 27, 2012 (Doc. 54-2, pp. 24-27).   Plaintiff suffered changes in his vision postoperatively and, on April 18, 2012, Dr. Mark Baker, former Wexford Health Sources, Inc. Strategic Clinical Initiatives Director, and Dr. John Shepard, a physician at Menard, engaged in a consultation and determined that Plaintiff did not require any additional surgical intervention at the time, but provided that he would be regularly evaluated by on-site Optometrists (Doc. 54-2, p. 31).

Plaintiff complained again of vision changes and was seen on June 19, 2012 by an on-site Optometrist (Doc. 54-2, p. 32).   Plaintiff was found to have developed a cataract in his right eye, a known complication of his retinal repair (*Id.*).   Dr. Baker approved a referral to a retinal specialist on June 27, 2012 for surgical removal of the scar tissue over the macula of Plaintiff's right eye (Doc. 54-2, p. 33).   Plaintiff was examined at the Marion Eye Center on August 1, 2012. Plaintiff was diagnosed with "macular puckering of the right eye retina" and a left eye retinal tear. Plaintiff underwent an immediate repair of the retina (Doc. 54-2, pp. 34-39).   Subsequently, on August 13, 2012, Dr. Baker approved another referral for Plaintiff to see a retinal specialist (Doc. 54-2, p. 41).   Plaintiff was evaluated at Marion Eye Center on October 31, 2012 and diagnosed

with a nuclear sclerotic cataract and macular puckering of his right eye (Doc. 54-2, p. 42). Following this exam, a Menard on-site Optometrist spoke with Dr. Ahmad at Marion Eye Center to discuss additional surgical treatment (Doc. 54-2, p. 44). The Menard on-site Optometrist submitted a referral for a cataract extraction and membrane peel, which was denied on November 7, 2013 (Doc. 54-2, p. 45). Dr. Baker denied the referral after consultation with Dr. Shepard, finding that in their medical opinion, Plaintiff did not meet the criteria for cataract extraction and would continue to be monitored by on-site Optometrists (*Id.*). Plaintiff was regularly monitored by on-site Optometrists and, following his December 26, 2013 examination, Plaintiff was referred for cataract extraction (Doc. 54-2, p. 51). This referral was approved on January 13, 2014 (Doc. 54-2, p. 52).

Plaintiff was subsequently evaluated by Illinois Eye Surgeons on March 5, 2014, wherein it was recommended that he undergo right eye cataract surgery (Doc. 54-2, p. 53). On April 4, 2014 Plaintiff was again referred for a retinal specialist consult, which was approved by Utilization Management (Doc. 54-2, pp. 54-55). Plaintiff was evaluated by a retinal specialist on May 16, 2014 and, on June 9, 2014, Plaintiff was approved for cataract surgery with intraocular lens implant (Doc. 54-2, pp. 56-57). Although there is some discrepancy regarding which eye was to undergo the cataract removal, Plaintiff underwent cataract surgery on his right eye on June 26, 2012 at Quantum Vision Centers (Doc. 54-2, pp. 59-71). At Plaintiff's first follow-up exam after his surgery, it was noted that Plaintiff was healing well (Doc. 54-2, p. 72). Plaintiff's on-site Optometrist submitted a referral for a membrane peel on August 8, 2014 (Doc. 54-2, p. 73), which, on August 22, 2014, an optometrist's note indicates that Plaintiff was waiting on this surgery. Plaintiff was also evaluated by an ophthalmologist at Illinois Eye Surgeons on September 9, 2014,

where Plaintiff reported blurred vision in both eyes, but noted that his vision in his right eye was improving (Doc. 54-2, pp. 76-79).    Further, Plaintiff's visual acuity, with correction, was determined to be 20/50 in his left eye was 20/50 and 20/40 in his right eye (Doc. 54-2, p. 77). Although Plaintiff expressed concerns about his left eye scar tissue at this appointment, it is noted that his left eye conditions are stable and not considered visually significant (*Id.*).

Based on the comprehensiveness of the medical records submitted into the record, the Court does not find it necessary to hold a hearing on Plaintiff's Motion for Temporary Restraining Order.

CONCLUSIONS OF LAW

*Temporary Restraining Order*

Federal Rule of Civil Procedure 65 provides specific procedures for the issuance of a preliminary injunction and a temporary restraining order ("TRO").    A TRO can be issued without notice and, by its term, is temporary in nature.   If a TRO is issued without notice, the matter must be set for a hearing on a motion for a preliminary injunction.    Rule 65(a) states that no preliminary injunction shall be issued unless notice is given to the adverse party.    In addition, Plaintiff must show that he is reasonably likely to succeed on the merits, that no adequate remedy at law exists, and that he will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted.    Finally, Plaintiff must show that the injunction will not harm the public interest.    *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).    *See also Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).    If Plaintiff meets this initial burden, "then the inquiry becomes a 'sliding scale' analysis where these factors are weighed against one another."    *Joelner*,

378 F.3d at 619.

In this case, Plaintiff is not entitled to a TRO.   Plaintiff's request for a TRO has been *de facto* converted into a motion for preliminary injunction as the respondent is on notice of the request and has been given an opportunity to respond.   *See Doe v. Village of Crestwood, Illinois*, 917 F.2d 1476, 1477 (7th Cir. 1990).   Therefore, because the Court will rule on the merits of Plaintiff's Motion for Preliminary Injunction, the Court **RECOMMENDS** that Plaintiff's request for a temporary restraining order be **DENIED**.

### *Preliminary Injunction*

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief.   *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (5th ed. 1995)).   The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit."   *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).   Plaintiff has the burden of demonstrating:

1. A reasonable likelihood of success on the merits;
2. No adequate remedy at law; and
3. Irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. of Health*, 699 F.3d 962, 972 (7th Cir. 2012).   As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning."   *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).   The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest."   *Id.*   In addition, the Prison Litigation Reform Act provides

that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."   18 U.S.C. § 3626(a)(2).    Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.   The movant's threshold burden, however, is to show the first three factors. *Ping v. Nat'l Educ. Ass'n*, 870 F.2d 1369, 1371 (7th Cir. 1989).

Plaintiff asserts that there is a substantial threat of irreparable harm if he is not granted a preliminary injunction[1] as he has lost all sight in his right eye and is losing sight in his left eye. Plaintiff further provides that he is being subjected to the threat of irreparable harm because he has been denied all treatment and care for his lower back disc disease.   The Court finds that Plaintiff's request for a preliminary injunction to obtain treatment for his lower back disc disease is beyond the purview of this lawsuit.   As the purpose of a preliminary injunction is "to minimize the hardship to the parties pending ultimate resolution of the lawsuit," *Faheem-El*, 841 F.2d at 717, the injunctive relief sought must clearly relate to the issues pending in the lawsuit.   This lawsuit does not relate to Plaintiff's treatment for his lower back disc disease.   Accordingly, any preliminary relief sought with respect to this issue is improper and should be **DENIED**.

With respect to the preliminary injunctive relief Plaintiff seeks for treatment for his eye conditions, the Court finds that Plaintiff has failed to meet his threshold burden.   First, Plaintiff's claims that he will suffer irreparable harm absent an injunction because he has completely lost

---

[1]   The Court notes that in his Motion Plaintiff requests a "temporary restraining order."   However, as found above, Plaintiff's motion for temporary restraining order has been *de facto* converted into a motion for a preliminary injunction.   Accordingly, for clarity's sake, the Court refers to Plaintiff's request as a preliminary injunction from this point forward.

vision in his right eye and is losing vision in his left eye are not substantiated.   According to Plaintiff's medical records, as of September 9, 2014, Plaintiff's visual acuity was 20/50 in his left eye and 20/40 in his right eye, with correction.   Further, Plaintiff's left eye conditions were described as stable and not considered visually significant.   There is no indication in Plaintiff's medical records that he has completely lost vision in his right eye or that he is currently experiencing vision loss in his left eye.   Although Plaintiff clearly suffers from various eye conditions, Plaintiff's contention that he will suffer irreparable harm absent injunctive relief is not substantiated.

Further, Plaintiff has not established that he is likely to succeed on the merits of his claim at this time.[2]   The underlying case states a claim for deliberate indifference to serious medical needs against the named Defendants.   Accordingly, to prevail on his claim, Plaintiff must show that his medical condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind."   *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).   In this case, it is readily apparent that Plaintiff suffers from serious medical conditions related to both his left and right eye.   However, a review of the evidence does not support a finding that Defendants acted with a sufficiently culpable state of mind – i.e. "deliberate indifference."

To demonstrate that a defendant acted with a "sufficiently culpable state of mind" a plaintiff must put forth evidence that the defendant knew of a serious risk to the prisoner's health and consciously disregarded the risk.   *Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not

---

[2]  Such a conclusion is not a judgment as to whether Plaintiff may ultimately prevail in this lawsuit.

enough.  *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985); *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).  Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference.  *Greeno*, 414 F.3d at 653.  A medical professional's deliberate indifference may be inferred where his or her decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment."  *King v. Kramer,* 680 F.3d 1013, 1018–19 (7th Cir. 2012) (quoting *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008)).

Further, the Eighth Amendment does not require that prisoners receive "unqualified access to health care." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992); *see also Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care").  The Seventh Circuit has recognized that "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir. 2008).  Moreover, the Seventh Circuit Court of Appeals recognizes that treatment decisions that necessarily require medical judgment, such as whether one course of treatment is preferable to another, are beyond the Eighth Amendment's purview.  *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (citation and quotation omitted).

Based on a review of Plaintiff's medical records, it is apparent that Plaintiff has received continuing medical care for his eye conditions while incarcerated at Menard.  Plaintiff was seen on at least twelve occasions by an optometrist from February 23, 2012 through August 22, 2014.

Moreover, during this period, Plaintiff received three surgeries for retinal detachment and cataract extraction.   Further, at the time this suit was filed, it appears that approval for a fourth surgery was pending.   Although Plaintiff apparently disagrees with the course of treatment prescribed, he has not provided evidence that Defendants have disregarded his serious eye conditions.   Rather, the evidence tends to support the opposite — that Defendants have provided consistent and continuing monitoring, evaluation, and treatment for Plaintiff's eye conditions.   Although Plaintiff may not have received all the treatment he desires, prisoners are not entitled to receive "unqualified access to health care."   *Forbes*, 112 F.3d at 267.   Defendants are entitled to invoke their professional, medical judgment in making treatment decisions.   Based on a review of the evidence currently on record, Plaintiff has not established a likelihood of success on the merits of his claim.

Finally, the Court notes that the preliminary relief Plaintiff seeks is the same that he has ultimately prayed for in his underlying lawsuit — additional treatment for his eye conditions. Accordingly, it appears that Plaintiff's claims could have an adequate remedy at law.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Second Motion for Temporary Restraining Order filed on August 28, 2014 (Doc. 4) be **DENIED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.   The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.   *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir.

2003).

**DATED: January 12, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**