IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RONALD BARROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-941-NJR-DGW |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motions for Summary Judgment filed by Defendant Dr. John Trost (Doc. 86) and Nurse Gail Walls (Doc. 94) be **GRANTED**, and that the Motion for Summary Judgment filed by Dr. Eric Johnson (Doc. 92) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff Ronald Barrow, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights have been violated. District Judge Nancy J. Rosenstengel screened Plaintiff's complaint and severed it into two

separate actions (Doc. 1). Pursuant to Judge Rosenstengel's Order, Plaintiff was allowed to proceed on the following claims in this lawsuit:

> Count 1: Eighth Amendment deliberate indifference claim against Defendants Johnson, Lochhead, Trost, Shearing, Walls, Baker, and Wexford Health Sources, Inc. ("Wexford") for failing to adequately treat Plaintiff's serious eye conditions.
>
> Count 2: Medical negligence claim in violation of Illinois State law against Defendants Wexford, Johnson, Lochhead, Trost, Shearing, Walls, and Baker.

Plaintiff's claims relate to the medical care, or lack thereof, he has received for his various eye conditions, including a detached retina, scarring, and cataracts, since 2012 at Menard. Plaintiff has named Drs. Eric Johnson and Christine Lochhead, Optometrists who provided treatment to Plaintiff at Menard during times relevant to this lawsuit, Drs. John Trost, Mark Barker, and Robert Shearing, Medical Directors serving at Menard during times relevant to this lawsuit, Gail Walls, a nursing director at Menard during relevant times, Wexford Health Sources, Inc., a private entity that contracts with the IDOC to provide medical care to inmates, and Kimberly Butler, the warden of Menard, who is a named defendant only for purposes of carrying out any injunctive relief, as defendants in this lawsuit.

Defendants Dr. John Trost, Dr. Eric Johnson, and Gail Walls filed motions for summary judgment arguing Plaintiff failed to exhaust his administrative remedies for the claims brought against them before filing suit (*see* Docs. 86, 92, and 94, respectively). Plaintiff timely responded to each Defendant's motion (*see* Docs. 97, 102, 103, and 106). On April 30, 2015, a hearing was held on Defendants' motions pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), in which Plaintiff appeared by video-conference and proffered testimony regarding grievances he filed in relation to this matter.

FINDINGS OF FACT

As indicated above, Plaintiff's claims in this action arise from the alleged inadequate medical care he has received for his eye conditions that have resulted in vision loss in both eyes. According to Plaintiff's complaint, he has suffered progressive vision loss dating back to 2006; however, his complaints in this matter focus primarily on care received since 2012 at Menard.  In seeking summary judgment on the issue of exhaustion, Defendants Trost, Johnson, and Walls point to two grievances filed by Plaintiff concerning medical treatment for his eye conditions during the relevant time period.  Defendants argue these grievances, dated December 5, 2012 and March 18, 2013, are not sufficient to exhaust the claims brought against them.

Plaintiff's **December 5, 2012 grievance** (Def. Ex. A, Doc. 87-2, pp. 6, 13-16) complains of the medical treatment he has received for his eye conditions.  In particular, Plaintiff complains of the pervasive pattern of Wexford's policies that are designed to save cost over providing adequate health care.  Plaintiff writes that he has dealt with various Menard medical directors, including Drs. Feinerman, Fahim, Shepherd, and, after not being seen by the "latest" medical director, Dr. Shearing, he was left with "no option except to file this instant grievance."  Plaintiff complains that the blanket refusal to remove his cataract and scar tissue is clearly deliberate indifference.  Plaintiff also recounts instances wherein he was examined by Drs. Johnson and Lochhead.  Plaintiff's counselor responded to this grievance on January 3, 2013 and Plaintiff submitted it to the grievance officer for review, who received it on January 15, 2013.  The grievance officer responded on March 20, 2013 and the Chief Administrative Officer ("CAO" – usually the warden), concurred on the same day.  The Administrative Review Board ("ARB") received Plaintiff's appeal of the decision on April 4, 2013, and issued its final determination on

the merits on April 22, 2013, prior to Plaintiff filing his suit on July 11, 2014.

Defendants Trost, Johnson, and Walls do not dispute that this grievance was exhausted through the administrative process; however, they contend that this grievance is insufficient to exhaust Plaintiff's claims against them.  In particular, Defendant Trost argues that because this grievance was filed *before* he became the Medical Director at Menard on November 25, 2013 and does not name or describe him, Plaintiff failed to comply with the Illinois Administrative Code in grieving his complaints against Defendant Trost.  Defendant Johnson contends that because he last treated Plaintiff on August 1, 2012, this grievance was filed beyond the sixty day time limit imposed by the Illinois Administrative Code and, as such, is insufficient to exhaust the claims against him.  Similar to Defendant Trost, Defendant Walls argues that Plaintiff failed to name, or sufficiently describe her in this grievance and, as such, it is procedurally deficient to exhaust the claims brought against her.

With regard to Plaintiff's **March 19, 2013 grievance** (Def. Ex. B, Doc. 87-5, pp. 61-63, 72-74, and 98-100), Plaintiff writes that it is a "follow-up and supplement" to his December 5, 2012 grievance that had been pending with the grievance officer since January 15, 2013 (discussed above).  In this "supplemental" grievance, Plaintiff again complains about the inadequate medical treatment he has received for his eye conditions.  Plaintiff claims that Wexford, Dr. Shearing, Dr. Johnson, and Dr. Lochhead continue to refuse to provide necessary treatment for his eye conditions due to policy.  Plaintiff recounts various examinations he has had with medical personnel, including Dr. Lochhead, Dr. Johnson, Dr. Baker, and Dr. Shearing, and sets forth his complaints regarding their treatment.  Although the disposition of this grievance is somewhat unclear, as there are multiple copies before the Court signifying different

dates on which it was received by the ARB and/or reviewed by Plaintiff's counselor, it appears that the ARB considered this grievance, along with the December 5, 2012 grievance, in issuing its final decision on April 22, 2013. Defendants' arguments, as set forth above, apply in substance to the March 19, 2013 grievance, with Defendant Trost, Johnson, and Walls arguing that this grievance is insufficient to establish exhaustion for any of Plaintiff's pending claims against them.

### *Pavey Hearing*

At the hearing held on April 30, 2015, Plaintiff addressed Defendants' arguments. Specifically, with regard to Defendant Trost's contention that Plaintiff's grievances do not exhaust the claims against him because prior grievances cannot be imputed to subsequent treaters, Plaintiff argued that his grievances complained about a continuing violation and, as such, when Defendant Trost came to Menard in November, 2013, he should not have been required to file additional grievances. Plaintiff averred that it is not his responsibility to ascertain when a new medical director comes to Menard and continually file grievances every time there is a new medical director, as he would never be able to initiate a lawsuit.

Defendant Johnson reiterated that Plaintiff's December 5, 2012 and March 19, 2013 grievances were not filed within the allowable timeframe, as Defendant Johnson last treated Plaintiff on August 1, 2012, more than sixty days prior to the filing of any grievance. Tangentially, Defendant argued that although Plaintiff may have complained about continuing care, Plaintiff's grievance should only exhaust as to treatment provided *after* the filing of the grievance, not treatment provided more than sixty days *before* the filing of the grievance. Further, Defendant Johnson contended that Plaintiff's December 5, 2012 does not specifically

complain about Defendant Johnson's treatment; rather, Defendant argued that this grievance only mentions him in passing and, as such, the grievance was insufficient to put this Defendant on notice that his treatment of Plaintiff was an issue.   Plaintiff addressed Defendant Johnson's arguments at the hearing, contending that Defendant Johnson has failed to provide evidence that he last treated Plaintiff in August, 2012.   Moreover, Plaintiff argued that he was seen interchangeably by Defendants Johnson and Lochhead, and, as a result, he did not know when Dr. Johnson left the institution.   Further, Plaintiff argued that because he was complaining about a continuing violation and he believed he was going to receive treatment, the sixty day timeframe should not apply to when he was last treated by Defendant Johnson.

Defendant Nurse Walls stood on the arguments made in her motion for summary judgment, asserting that Plaintiff's grievances fail to name or reasonably describe her and she is not in the class of people complained of in those grievances (i.e. medical directors and treating physicians).   Plaintiff responded to these arguments, referencing his Exhibit 2, attached to his response to Defendant Walls' motion (Doc. 106, pp. 3-4).   This exhibit is a grievance dated February 20, 2013, wherein he complains about not receiving medication, including artificial tears (*Id.*).   Defendant Walls sent a memorandum to Plaintiff regarding this grievance on February 20, 2013 (*Id.* at 5).   There is no documentation from Plaintiff's grievance officer, the warden, or the ARB concerning this grievance.   Plaintiff argued that this grievance, and his subsequent appeal to the ARB (which was written in a letter format and for which there is not a response), names Defendant Walls specifically.   As such, Plaintiff contends that Defendant Walls was on notice of the complaints lodged against her and, when the grievance procedure is ineffective, as it is at Menard, the Court should consider the letters sent by Plaintiff as evidence

of exhaustion.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

### *Exhaustion Requirements under the PLRA*

The Prison Litigation Reform Act provides:

No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).  *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983).  Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.   In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.  *Id.* 544 F.3d at 742.  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

***Exhaustion Requirements under Illinois Law***

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  Ill. Admin. Code tit. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after

the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b). The grievance form shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint. *Id.* § 504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed, where reasonably feasible under the circumstances. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative remedies are not exhausted until the appeal is ruled on by the Administrative Review Board. *See Id.* The Administrative Review Board shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id.* § 504.850(f).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840. If, after receiving a response from the CAO, an offender feels that the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id.* § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him.

*See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

Based on the evidence adduced and arguments made at the hearing, it is recommended that the Court find Plaintiff exhausted his administrative remedies as to Defendant Johnson, but did not exhaust his administrative remedies as to Defendants Trost and Walls.

### 1. Defendant Dr. John Trost

Defendant Trost avers that because Plaintiff's grievances pre-date the date on which he became the medical director at Menard, they are insufficient to exhaust the claims against him. The Court agrees.

With regard to this Defendant, the question before the Court is whether, when grieving a continuing failure to provide adequate medical care, Plaintiff must file a grievance specifically identifying and implicating every healthcare provider against whom he subsequently files suit.

This Court has found no Seventh Circuit Court of Appeals opinion directly on point, nor have the parties cited to any such case.  Plaintiff argues, however, that because he is alleging a continuing violation, he is not required to file grievances as to each defendant who provides him subsequent care, as it will hinder his ability to file suit.  Plaintiff's argument is correct insofar as the Seventh Circuit has held that "prisoners need not file multiple successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing" in order to exhaust their administrative remedies.  *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Here, while there is no doubt that Plaintiff is complaining of the continuing lack of medical care, his grievances complaining of inadequate medical care received *preceding* Defendant Trost's tenure at Menard should not be imputed to this Defendant.  Plaintiff's claims against Defendant Trost are not based on a policy or practice, such as the policy or practice claim brought against Wexford (and considered in *Turley*); rather, Plaintiff's claims against Defendant Trost are related to the provision of treatment, or lack thereof, furnished and/or authorized by this Defendant. Accordingly, Plaintiff's change in treatment providers necessarily changed the conditions of the medical care provided, necessitating a new grievance.  *See Burt v. Berner*, 2015 WL 1740044 (S.D. Ill. 2015).  Accordingly, the Court finds that Plaintiff failed to exhaust as to Defendant Trost prior to filing this lawsuit[1].

## 2.  Defendant Dr. Eric Johnson

Defendant Dr. Johnson makes two primary arguments.  First, Defendant Johnson argues

---

[1] The Court notes that at the *Pavey* hearing Plaintiff complained that Defendant Trost failed to assert the affirmative defense of exhaustion in his answer to Plaintiff's amended complaint. Plaintiff's argument is a non-starter, as Defendant Trost's motion for summary judgment on the issue of exhaustion was pending at the time his answer was filed, thus preserving his affirmative defense.

that Plaintiff's grievances, dated December 5, 2012 and March 19, 2013, are untimely to exhaust the claims against him because he last saw Plaintiff on August 1, 2012, more than sixty days prior to the filing of these grievances.  Second, Defendant Johnson argues that even if Plaintiff's grievances were exhausted in a timely manner, they were not sufficient to put the prison on notice that Plaintiff was complaining about treatment provided by this Defendant.

With respect to Defendant Johnson's first argument, the Court finds it to be unavailing. The complaints lodged in Plaintiff's grievances do not concern a particular "incident" wherein Defendant Johnson provided inadequate care; rather, Plaintiff's grievances complain of a continuing wrong, to which Defendant Johnson was a part.  Such complaints do not lend themselves to a requirement that following each "incident", Plaintiff must file a grievance within sixty days. *See Wilder v. Sutton*, 310 Fed. App'x 10, 15 (7th Cir. 2009).  The Court finds that in this instance, it would be nonsensical to require Plaintiff to grieve every "incident" when his complaints relate to the inadequate totality of care, and, more precisely, the lack of follow-up care, he received from his treating physicians, including Defendant Johnson.  Moreover, the Court finds that Plaintiff's references to Defendant Johnson's treatment, including his note that he "saw Dr. Johnson on 7-23-2012 and informed him of the two floaters in my left eye and concern of retina damage [sic] on 8-1-2012," was sufficient to put the prison officials on notice that Defendant Johnson was a medical provider of Plaintiff's who was aware of his eye conditions and was not adequately addressing them.  For these reasons, the Court finds Plaintiff sufficiently exhausted his claims as to Defendant Johnson prior to filing suit.

### 3. Defendant Nurse Gail Walls

Defendant Walls argues that Plaintiff's grievances fail to name or describe her and, as

such, are insufficient to exhaust the claims against her.  Plaintiff does not directly dispute that his December 5, 2012 and March 19, 2013 grievances fail to exhaust as to Defendant Walls; however, he asks the Court to rely on a grievance dated February 20, 2013, to which Defendant Walls wrote a response, and other letters written to and/or from this Defendant, to find that Plaintiff exhausted his claims as to this Defendant.  With regard to Plaintiff's February 20, 2013 grievance, Plaintiff has failed to provide evidence that it was properly exhausted.  While there is a date and signature of a counselor, there is not a response from the counselor, nor is there a response from the grievance officer, warden, or ARB.  Accordingly, this grievance was not exhausted and is insufficient to exhaust the claims against Defendant Walls.  Further, the Court does not find that Plaintiff's written correspondence with Defendant Walls satisfies the exhaustion requirement.  As set forth above, the Illinois Administrative Code sets forth particular procedures that must be followed in order for an inmate to exhaust his administrative remedies.  Such procedures do not include informal written correspondence with prison personnel.  Moreover, although Plaintiff testified that the grievance procedure at Menard is "ineffective and unconstitutional," he did not provide any explanation as to how the "ineffective and unconstitutional" practices hindered his ability to exhaust his claims as to this particular Defendant.  Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies as to Defendant Walls prior to filing suit.

## RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motions for Summary Judgment filed by Defendant Dr. John Trost (Doc. 86) and Nurse Gail Walls (Doc. 94) be **GRANTED**, and that the Motion for Summary Judgment filed by Dr. Eric Johnson (Doc. 92) be

**DENIED**; that the Court **FIND** that Plaintiff did not exhaust his administrative remedies prior to filing suit against Defendants Dr. John Trost and Nurse Gail Walls; that the claims against Defendants Trost and Walls be **DISMISSED WITHOUT PREJUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 16, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**