IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD BARROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-941-NJR-DGW |
| ) | |
| WEXFORD HEALTH SOURCES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on Plaintiff's Motion for Preliminary Injunction (Doc. 132). For the reasons set forth below, it is **RECOMMENDED** that the Motion be **DENIED IN PART AND FOUND MOOT IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff Ronald Barrow filed this lawsuit pursuant to 42 U.S.C. §1983 on August 28, 2014 alleging Defendants were deliberately indifferent to his serious medical needs. More specifically, Plaintiff alleges that Defendants, various medical and other personnel at Menard Correctional Center ("Menard"), have failed to provide him adequate eye care since 2012, resulting in loss of vision in both his right and left eyes. Along with his complaint, Plaintiff filed a motion for temporary restraining order that was converted to a motion for preliminary injunction. The undersigned recommended that District Judge Nancy J. Rosenstengel deny Plaintiff's motion for

preliminary injunction on January 14, 2015 (Doc. 84). This Court recommended denial based on its finding that Plaintiff had not established a likelihood of success on the merits or irreparable harm absent injunctive relief (*see id.* at pp. 10-11). On March 6, 2015, Judge Rosenstengel adopted the undersigned's Report and Recommendation and denied Plaintiff's motion for preliminary injunction (Doc. 100).

On April 30, 2015, Plaintiff filed a subsequent motion for preliminary injunction (Doc. 132). The Court held a hearing on said motion on July 13, 2015 (*see* Doc. 169). In its Order setting the hearing, the parties were advised that all arguments and evidence presented would be limited in time to October, 2014 to the present as the Court had already reviewed Plaintiff's complaints concerning his medical care through September, 2014 and issued a ruling on the same. At the July 13, 2015 hearing, the Court granted Plaintiff leave to supplement his arguments as the Court was faced with a time constraint (*see* Doc. 184, p. 39). Accordingly, the Court granted Plaintiff's Motion to Supplement Hearing (Doc. 167) and took Plaintiff's arguments and evidence presented in said motion under consideration in this Report and Recommendation.

In his motion for preliminary injunction now before the Court, Plaintiff seeks an order compelling Defendants to "perform their pre-existing duties under the Constitution and laws of the United States, and State of Illinois and the contract between Wexford Health Sources Inc. and Illinois Department of Corrections" (Doc. 132, p. 2). In particular, Plaintiff asks the Court to order Defendants to provide the community standard of care to treat his eye disease, including (1) removal of scar tissue on his right eye lens implant; (2) removal of a cataract in his left eye; (3) a complete examination of both eyes; and (4) a proper pair of prescription eye glasses that fit (*id.* at p. 3).

In support of his motion, Plaintiff filed a memorandum detailing his medical care, or lack thereof, from February 2012 to April 2015 (*see* Doc. 132-1).  Plaintiff also filed a declaration in support of his motion, along with various medical records spanning from April 2012 to April 2015 (*see* Docs. 133 and 134).

The Court is not inclined to provide a comprehensive overview of the medical care Plaintiff received prior to October, 2014, as the undersigned's previous Report and Recommendation detailed said care and found that Plaintiff was not entitled to a preliminary injunction.  However, by way of background, the Court explains that Plaintiff has dealt with a myriad of eye conditions since February, 2012.  In particular, Plaintiff suffered from a detached retina in his right eye in February, 2012 that was repaired the same month (*see* Doc. 132-1, p. 3). Plaintiff was later informed by an outside specialist, Dr. Ahmed, that two additional procedures, a cataract removal and scar tissue removal, were necessary to improve his right eye vision (Doc. 132-1, p. 3).  Plaintiff's case was referred to collegial, but the request for the procedures were denied until December 26, 2013, when he was approved for cataract evaluation (*Id.* at p. 7). Plaintiff underwent a procedure for removal of his right eye cataract on June 26, 2014 (*Id.* at p. 11). Subsequently, Plaintiff was approved for a membrane peel, which he received on October 14, 2014 (*Id.* at pp. 14-15).

Plaintiff's subsequent complaints, and those at issue here, relate to his loss of vision in his left eye due to a cataract, unbalanced vision that causes him headaches, and Defendants' failure to properly fit Plaintiff with eye glasses to correct his vision.  In particular, Plaintiff's medical records indicate that following the membrane peel procedure on October 14, 2014, Plaintiff was examined by Defendant Dr. Lochhead on October 21, 2014 (Doc. 133, p. 26).   Plaintiff

Page **3** of **10**

complained about headaches behind his right eye, but noted that they improved with wearing an eye patch (*Id.*). Plaintiff was to return to the clinic in one week (*Id.*). Plaintiff again saw Defendant Dr. Lochhead on November 13, 2014, wherein it was noted that Plaintiff had a "mild cataract" in his left eye and his visual acuity was reduced due to glare (*Id.* at p. 27). Defendant Dr. Lochhead indicated that Plaintiff's visual acuity had improved, but he was to follow-up with a retina specialist (*Id.*). Defendant Lochhead noted that she would consider cataract referral when Plaintiff was "released from retina" (*Id.*).

Plaintiff also saw Dr. Tarigopula, an outside specialist from Quantum Vision Centers, on November 13, 2014 for his one-month follow-up of his membrane peel procedure (*Id.* at pp. 28-32). The medical records note that Plaintiff's "right eye has improved … [h]e's still having headaches all the time. The vision is still not as sharp as it was right after the cataract surgery, but it has improved. [Plaintiff] still has 2 large floaters in the left eye, nothing like that in the right eye. The right eye itches a lot off and on, but that has also lessened" (*Id.* at p. 30). Plaintiff's visual acuity was noted as 20/60 in his right eye and 20/40 in his left eye (*Id.*). Dr. Tarigopula noted that Plaintiff's retina tear was stable and there were no new tears or breaks (*Id.* at p. 28). Plaintiff was directed to follow-up again in three months (*Id.*).

Plaintiff was examined by Defendant Dr. Lochhead at Menard again on November 20, 2014 and December 4, 2014 (*Id.* at pp. 33-34). Defendant Dr. Lochhead referred Plaintiff for a follow-up visit at Quantum Vision Center on January 9, 2015 (*Id.* at p. 38). Said request was approved on January 19, 2015 (*Id.* at p. 42) and Plaintiff was scheduled for an examination with Dr. Tarigopula on February 20, 2015 (Doc. 134, p. 1). At his February 20, 2015 appointment, it was discussed that Plaintiff was being seen for his three-month follow-up from his membrane peel

(Doc. 147-2, p. 4).  Dr. Tarigopula noted that Plaintiff's retinal repair was stable and there were no new tears or breaks (*Id.*).

Prior to his appointment on February 20, 2015, Defendant Dr. Lochhead referred Plaintiff for a Yag capsulotomy (a laser procedure used to treat capsular opacification that causes decreased vision, glare, and other symptoms following cataract surgery).[1]  Plaintiff was notified that the Yag procedure was scheduled during his March 20, 2015 examination with Defendant Dr. Lochhead (Doc. 134, p. 9).  On April 8, 2015, Plaintiff saw Dr. Unwin at Quantum Vision Centers for a Yag evaluation of the right eye and cataract evaluation of the left eye (Doc. 147-2, p. 9).  The medical records from this appointment state that Plaintiff was to undergo the Yag procedure on the same date (*Id.* at p. 12); however, Plaintiff asserts he did not receive this procedure and Defendants explain there is no indication in the records why the procedure was not done on this date.  Subsequently, on May 8, 2015, Plaintiff was again referred for the Yag procedure and said referral was approved on May 14, 2015 (Doc. 167-1, pp. 31-32).  Plaintiff underwent the Yag procedure on June 25, 2015 (Doc. 166, p. 7).

With regard to contact lenses, an order for such was completed on April 23, 2015 (Doc. 167-1, p. 28).  However, when the contact lenses were delivered to Plaintiff on April 29, 2015, he indicated that they made his vision "all blurry" and he refused the new lenses, indicating he would keep the lenses he already had (*Id.*).  On May 29, 2015, Dr. Kehoe, the new on-site Menard optometrist, ordered Plaintiff a new contact lens for his left eye and issued Plaintiff a medical permit allowing him to wear his eyeglasses with and without the left lens (as Plaintiff was advised to remove his eyeglass lens when he wears his left contact lens) (*Id.* at pp. 33-34).

---

[1] Nd-YAG Laser Capsulotomy, Medscape, http://emedicine.medscape.com/article/1844140-overview (retrieved February 18, 2016).

*Hearing on Motion for Preliminary Injunction*

The Court held a hearing on Plaintiff's motion for preliminary injunction on July 13, 2015. At the hearing, Plaintiff testified on his own behalf, explaining that he underwent a procedure to remove scar tissue from his right eye in June, 2015 and his vision in this eye had improved; however, Plaintiff indicated that he has continued to lose sight in his left eye due to a cataract that was diagnosed about two years ago. Plaintiff argued that he is losing vision in his left eye and Defendants are waiting to remove the cataract until he has lost all vision in his eye. Plaintiff asserted that he should not have to go blind in his eye before undergoing a cataract removal procedure. With respect to his complaints about his eyeglasses and contact lenses, Plaintiff explained that he currently has a contact lens that he wears without glasses so that he can see distance; however, when he is wearing the contact lens, he cannot see up close and therefore, cannot read and write. As such, Plaintiff must wear his eyeglasses to read and write, but then he is unable to see distances further away. Plaintiff indicated that Dr. Kehoe had recently ordered him new lenses to correct this issue. Finally, Plaintiff indicated that his cataract and lack of adequate corrective lenses has caused him to suffer from unbalanced vision, which has resulted in severe headaches. Plaintiff complained that his prescription for Tylenol to address his headaches often went unfulfilled.

Defendant Dr. Trost, the Medical Director at Menard, provided testimony on behalf of Defendants. Defendant Trost described the medical treatment Plaintiff had been given for his eye conditions since approximately October, 2014. Said testimony corresponded to the aforementioned medical records. Importantly, Defendant Trost noted that Plaintiff received a membrane peel to address scar tissue in his right eye in October, 2014. Defendant Trost indicated

that Plaintiff was seen by Dr. Unwin at Quantum Vision Centers in April, 2015 to undergo the Yag procedure, but said procedure was not completed.  At this appointment, however, Dr. Unwin documented that Plaintiff had a cataract in his left eye, but it was stable and would be observed.  Plaintiff subsequently underwent a Yag procedure on his right eye on June 25, 2015.  Further, Defendant Trost testified that on July 2, 2015, the on-site optometrist at Menard determined that Plaintiff's best corrective visual acuity was 20/30 in his right eye and 20/50 in his left eye.  As of the date of the hearing, Defendant Trost testified that no medical professional had indicated that surgery to remove Plaintiff's left eye cataract was medically necessary.  Defendant Trost explained that in order for Plaintiff to undergo cataract surgery on his left eye he would first need a recommendation for such a procedure from an ophthalmologist.  From there, the on-site optometrist and Defendant Trost would present the recommendation for surgery in collegial and the ultimate decision is made by Wexford.

### CONCLUSIONS OF LAW

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (5th ed. 1995)).  The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit."  *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).  Plaintiff has the burden of demonstrating:

1. A reasonable likelihood of success on the merits;
2. No adequate remedy at law; and
3. Irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. of Health*, 699 F.3d 962, 972 (7th

Cir. 2012). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.* In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents. The movant's threshold burden, however, is to show the first three factors. *Ping v. Nat'l Educ. Ass'n*, 870 F.2d 1369, 1371 (7th Cir. 1989).

While the Court acknowledges that Plaintiff suffers from serious eye conditions and has been made to wait some time before receiving various procedures, Plaintiff cannot meet his threshold burden and demonstrate he is entitled to preliminary injunctive relief. Specifically, the Court finds that Plaintiff's complaints do not present a situation wherein he will suffer imminent, irreparable harm absent injunctive relief. As mentioned above, Plaintiff seeks a preliminary injunction ordering Defendants to provide the following: (1) scar tissue removal procedure for his right eye lens implant; (2) cataract removal for his left eye; (3) a complete examination of both eyes; and (4) a proper pair of prescription eye glasses. The Court first notes that Plaintiff underwent a Yag procedure on his right eye lens in June, 2015, after filing this motion. Accordingly, his request for "scar tissue removal procedure" for his right eye is moot. With regard to his request for a complete examination of both eyes, the Court finds that Plaintiff has

been provided with regular eye examinations with both the on-site optometrist and outside specialists. As such, the Court finds that his request for said relief is also moot. Similarly, the Court finds that medical personnel at Menard are attempting to provide Plaintiff with proper eyeglasses; accordingly, his request for said relief is moot and the Court finds that the failure to provide Plaintiff with a proper pair of eyeglasses does not constitute imminent, irreparable harm.

Finally, the Court addresses Plaintiff's request for cataract removal. The evidence before the Court reveals that Plaintiff has complained about a cataract in his left eye for approximately two years. Plaintiff complains that this cataract is causing him to lose vision in his left eye and he fears he will lose total vision in his eye before it is removed. According to the medical records, Plaintiff's cataract has been noted by medical personnel who have described its condition as "stable." Accordingly, Plaintiff has not been approved for cataract removal. Although Plaintiff attests that a delay in the procedure will cause him to lose vision and may result in permanent damage, there is no evidence on the record to support his assertion. In particular, the Court points to Plaintiff's medical records from April 8, 2015, wherein Dr. Unwin, an outside specialist at Quantum Vision Centers, noted Plaintiff had a cataract in his left eye, but the condition was stable and would be observed (*see* Doc. 147-2, p. 7). Further, according to the National Eye Institute of the National Institutes of Health, "[a] cataract needs to be removed only when vision loss interferes with your everyday activities … In most cases, delaying cataract surgery will not cause long-term damage to your eye or make the surgery more difficult. You do not have to rush into surgery." Facts about Cataracts, NATIONAL EYE INSTITUTE (NEI), NATIONAL INSTITUTES OF HEALTH, https://nei.nih.gov/health/cataract/cataract_facts (last visited February 19, 2016). Although the Court acknowledges Plaintiff's complaints concerning the effect his cataract has on his ability to

read and write and its presence causing unbalanced vision and headaches, such circumstances do not indicate that Plaintiff may suffer "irreparable harm" absent an injunction. *See Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for." (quotation marks and citation omitted)); *see also Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment after trial"). Thus, even when considering Plaintiff's medical records, the Court finds that Plaintiff has failed to provide evidence that his eye conditions may result in irreparable harm absent preliminary relief.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 132) be **DENIED IN PART AND FOUND MOOT IN PART**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 22, 2016**

**DONALD G. WILKERSON**
**United States Magistrate Judge**